UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>)<br>Plaintiff,   )<br>v.   )<br>)   Criminal No.  05-386(ESH)<br>FRANCISCO J. GONZALEZ RUAN,   )<br>)<br>Defendant.   )<br>_____)  | |

**OMNIBUS MOTION AND INCORPORATED MEMORANDUM OF LAW**

Defendant Francisco Javier Gonzalez Ruan, through counsel, respectfully submits the following omnibus motion pursuant to Fed. R. Crim. P. 12(b) and requests a hearing on the issues raised below.

As a primary matter, pursuant Brady v. Maryland, 373 U.S. 83 (1963), its progeny, and Giglio v. United States, 405 U.S. 150 (1972), Mr. Ruan respectfully moves the Court to enter an order requiring the government to disclose and produce information specified below regarding the informants and cooperating witnesses who played an active role in the crime with which Mr. Ruan is charged or who will testify in this matter.

Mr. Ruan also requests the Court to conduct a pretrial hearing pursuant to Fed. R. Evid. 801(d)(2)(E) to determine the scope of the conspiracy in which Mr. Ruan is alleged to have participated and the admissibility of statements of alleged co-conspirators.  Mr. Ruan specifically seeks evidence of statements that link Mr. Ruan to the alleged conspiracy.  To date, Mr. Ruan has received no such statements and submits that none exist.

Mr. Ruan moves the Court to sever his case from that of the other charged defendants pursuant to Fed. R. Crim. P. 14.  The evidence against Mr. Ruan and his co-defendants is at such

a great disparity that and there exists no means for Mr. Ruan to secure a fair trial if joined with Antoine Jones, Lawrence Maynard, and Kirk Carter.

Lastly, Mr. Ruan reserves the right to seek suppression of any identification evidence and fruits thereof obtained in violation of the Fourth Amendment to the United States Constitution and in violation of the Due Process Clause.[1]

## BACKGROUND

On August 24, 2006, federal authorities in the Southern District of Texas arrested Francisco Javier Gonzalez Ruan as he <u>legally</u> entered the United States. He was presented in that district and the court ordered him removed to Washington, D.C. for further proceedings.

On September 12, 2006, Magistrate Judge Facciola conducted an initial appearance hearing at which Mr. Ruan was arraigned in Case Number 06-072. A detention hearing was held on September 22, 2006, at which time the government indicated an immigration detainer had been filed against Mr. Ruan. He was ordered held without bond.

On March 21, 2007 the government filed a superseding indictment in Case Number 05-386, in which it joined Mr. Ruan with Antoine Jones, Lawrence Maynard, Kirk Carter, Jose Garcia, and Carlos Reyna. On May 7, 2007 the government dismissed the original indictment in Case Number

---

[1] According to the government, Mr. Ruan was identified in a photograph in 2004, presumably by a confidential informant. After being identified, law enforcement agents used the photograph to subsequently indict and arrest Mr. Ruan. The government has not confirmed what photograph it used for the informant to identify Mr. Ruan, what the circumstances and procedures were used for the informant selecting the photograph were, or who the informant was who identified Mr. Ruan as having conspired to distribute cocaine and cocaine base. These issues may lose significance depending on the informant's familiarity with Mr. Ruan. At this juncture, however, Mr. Ruan has no information explaining how he was identified.

06-072 against Mr. Ruan. On May 10, 2007, the D.C. Jail mistakenly released Mr. Ruan.

Mr. Ruan is currently charged with Conspiracy to Distribute and Possess With Intent to Distribute Cocaine and Cocaine Base in violation of 21 U.S.C. § 846. The indictment alleges that from 2003 up to October 24, 2005, in the states of Texas, Maryland, North Carolina and in the District of Columbia, Mr. Ruan conspired with others to distribute cocaine in excess of five kilograms in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii), and cocaine base in excess of fifty grams in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(iii).

The government has indicated that it has provided to the defense all discovery in its possession. The government has indicated that of the dozens of hours of telephone surveillance recordings in its possession, none of the recordings contain the voice of Mr. Ruan. Moreover, none of the recordings mention the name of Mr. Ruan. The government has provided no information that any phone number used by members of the alleged conspiracy was registered to Mr. Ruan. None of the witnesses who testified in Mr. Jones's first trial have ever seen Mr. Ruan, met Mr. Ruan, or know Mr. Ruan.

Yet, the government alleges that Mr. Ruan participated in a single conspiracy with Antoine Jones, Lawrence Maynard, and Kirk Carter and the other co-defendants to enrich themselves by engaging in transactions to buy and sell cocaine and cocaine base. As the Court is aware, the government only joined Mr. Ruan and "the Mexicans" in the current indictment after the jury failed to reach a verdict with regard to Mr. Jones in the first trial. Notably, the government does not allege that any "Mexican" ever supplied Jones with cocaine base or discussed supplying Jones with cocaine base. None of the houses Jones rented in Maryland are alleged to have contained any tools for converting cocaine into cocaine base. Setting aside the tenuous connections between Mr. Ruan and

3

Mr. Jones implied by the indictment, and accepting the government's allegations as true, the indictment does not establish that Mr. Ruan joined a conspiracy to distribute cocaine base in Washington, D.C. or anywhere else. At most, it establishes a conspiracy to sell cocaine powder to Antoine Jones in Maryland; and one for Antoine Jones to sell cocaine and cocaine base in Washington, D.C. through Lawrence Maynard and Kirk Carter. The government has joined Mr. Ruan in the conspiracy to sell cocaine and cocaine base in Washington, D.C. to bolster the allegations involving Mr. Ruan selling cocaine to Mr. Jones in Maryland, thereby prejudicing Mr. Ruan.

According to the oral representations of the government, specific evidence against Mr. Ruan consists of the testimony of an unidentified witness who will say that Mr. Ruan was frequently together with Guadalupe Barrone, a co-defendant who negotiated directly with and gave orders directly to government witnesses concerning the transport of cocaine from Mexico. The witness will allegedly testify that in 2005, while Mr. Barrone was present, Mr. Ruan once said that he was "crossing a lot of stuff into the United States." The witness will also say that in May, 2006 Mr. Ruan and Mr. Barrone discussed sending "a shipment" to the United States in a tractor trailer under "Joe's" guidance.

According to written representations of the government, on February 6, 2004, agents of the Bureau of Immigration and Customs Enforcement (ICE) observed three Hispanic men at a restaurant in Arundel Mills, Maryland.[2] One of the men was identified as Francisco Javier Gonzalez Ruan, who had allegedly arrived from Texas at BWI earlier that day. According to the grand jury testimony

---

[2] By including facts as alleged in materials provided by the government, Mr. Ruan does not concede that these facts are true or accurate.

of Agent Gikas, she was able to identify Mr. Ruan from photograph that had been faxed to her. The ICE agents placed the three men under surveillance and followed them to a residential location in Largo, Maryland. The men subsequently departed this location. Two of the men departed in a silver Impala automobile. The third man departed from the BWI airport after purchasing a ticket to Houston, Texas.

On February 9, 2004, an unidentified witness indicated to the government that a man identified as Francisco Javier Gonzalez Ruan was at that time in McAllen, Texas. The person identified as Mr. Ruan was reportedly seen inside of a silver Impala automobile with a second unidentified occupant.

On February 27, 2004, the government indicates that a man identified as Francisco Javier Gonzalez Ruan arrived at BWI airport from Harlingen, Texas. A person identified as Daniel Zintura arrived on the same flight. The two men spent the night at a Comfort Inn near the BWI airport. On February 28, 2004, the men entered a Ford Excursion along with two other Hispanic men and one Hispanic woman. The five passengers went to a residential address in Bowie, Maryland. After departing that location, the five passengers drove South along I-95 toward Virginia. Once in Virginia, they were stopped by Virginia law enforcement officers for allegedly speeding. A drug dog searched the car. No narcotics were discovered or seized. No arrest was made.

On March 21, 2007, a grand jury returned the indictment in the above-captioned matter. The indictment alleges that Mr. Ruan conspired to supply cocaine to Antoine Jones, employed people to transport cocaine to Antoine Jones, stored cocaine in houses rented by Antoine Jones, lived in houses rented by Antoine Jones, accepted money from Antoine Jones for payment for cocaine. It provides no notice from which to glean factual allegations that underpin the charges against Mr.

Ruan aside from broad speculative and conclusory statements which no discovery, testimony, or statements support. The discovery identifies only a single statement allegedly made by Mr. Ruan the substance of which is that he "crossed a lot of stuff" into the United States, but does not otherwise link him in a conspiracy to sell narcotics in the District of Columbia.[3] The discovery does not identify physical evidence being seized from Mr. Ruan or physical evidence the government may seek to introduce against him at trial. The discovery does not indicate how, or by whom, Mr. Ruan was identified at any point during the government's investigation of this matter. The discovery does not clarify where and how the conspiracy Mr. Ruan allegedly joined was formed or operated.

---

[3] Mr. Ruan recognizes that "a conspiracy prosecution may be brought in any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators." United States v. Lan Kwong-Wah, 924 F.2d 298, 301 (D.C. Cir. 1991) (quoting United States v. Rosenberg, 888 F.2d 1406, 1415 (D.C. Cir. 1989)); see also Hyde v. United States, 255 U.S. 347, 367 (1912). To this end, the government has joined Mr. Ruan with Antoine Jones, but provided absolutely no factual basis for what the scope of their conspiracy was together or how Mr. Ruan indicated his assent to be part of a conspiracy to sell drugs in Washington, D.C.

The only information the government has provided concerning Mr. Ruan involves three dates in February, 2004, when he was allegedly witnessed in Maryland; and one date in 2005 and again in 2006 when he was in Texas or Mexico allegedly discussed shipping "stuff" to the United States. Even if one were to draw every negative inference possible from otherwise non-incriminating behavior and statements to accept the government's bald unsupported assertions as true, nothing the government alleges establishes that Mr. Ruan ever set foot in Washington, D.C. or reasonably foresaw that Mr. Jones would distribute in Washington, D.C. the cocaine that he had purchased, let alone process it into cocaine base. Any act committed in the District of Columbia was committed independently by Antoine Jones as part of a separate conspiracy involving separate co-conspirators and a separate goal– to sell cocaine in the District of Columbia. To the extent that the government alleges that Mr. Ruan is implicated in this separate conspiracy, he requests evidence thereof as outlined in his request for information about the co-conspirators who implicate him in this crime. To the extent that the government cannot link Mr. Ruan to Mr. Jones's alleged conspiracy to sell drugs in Washington, D.C., Mr. Ruan's case should be dismissed for lack of venue. At a minimum, Mr. Ruan's case should be severed from Mr. Jones's and the other co-defendant's whose conspiracy involves the distribution of cocaine and cocaine base in Washington, D.C. and not the shipment of cocaine from Mexico to Maryland.

Nothing in the discovery indicates that Mr. Jones ever identified Mr. Ruan by name or description or even knew of his existence; nor does the discovery identify a point at which Mr. Ruan had contact with an agent of Mr. Jones or Mr. Jones had contact with a purported agent of Mr. Ruan. Indeed, the government does not identify in the discovery anyone who could be characterized as an agent of Mr. Ruan. The government has provided only the allegations of a self-proclaimed co-conspirator who allegedly saw Mr. Ruan and Mr. Barrone together and once heard Mr. Ruan say that he was "crossing a lot of stuff into the United States."[4]

The indictment alleges that Mr. Ruan used homes rented by Mr. Jones in Maryland as temporary residences, but there is no discovery indicating that Mr. Ruan ever remained at one of these houses for more than a few hours. The indictment alleges that Mr. Ruan collected money and provided cocaine, but there is no discovery indicating when Mr. Ruan performed these acts, with whom he transacted this business, or the circumstances under which he transported these drugs and money. The discovery provides no greater detail than the bald allegations listed in the indictment. Thus, Mr. Ruan is left to guess what testimony the government will produce to support its allegations, leaving only one conclusion to be drawn: The evidence against Mr. Ruan consists solely of a confidential informant. Mr. Ruan's difficulty in defending against broad allegations of an unidentified witness is only exacerbated by the government's decision to join Mr. Ruan with defendants who allegedly engaged in an extensive conspiracy to distribute cocaine and cocaine base on the streets of Washington, D.C. and against whom the government has numerous confidential informants testifying and hours of audiotape recordings of their voicing purporting to implicate them

---

[4] Mr. Ruan does not assert that the government has acted in bad faith or withheld information it has an obligation to produce under Fed. R. Crim. P. 16.

in the possession of over 95 kilograms of cocaine and over $800,000.  Without the information requested in this motion, Mr. Ruan is simply in no position to defend himself in this case.

### ARGUMENT

I.   THE COURT SHOULD REQUIRE THE GOVERNMENT TO REVEAL THE NAME OF THE CONFIDENTIAL INFORMANTS

The Due Process Clause of the United States Constitution requires that upon request, the government must produce all evidence that is favorable to the accused and material to guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 87 (1963).

Mr. Ruan recognizes that the Supreme Court has held that the government enjoys a limited privilege not to disclose the identity of its confidential informants.  Roviaro v. United States, 353 U.S. 53, 60-61 (1957).  However, that privilege must give way if disclosure is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause."  Id.  Specifically, the government must disclose the identity if the informant "had some sort of direct connection, either as a participant or an eyewitness, to the crime charged."  United States v. Gaston, 357 F.3d 77, 84 (D.C. Cir. 2004).

In this case, the government relies heavily on at least one confidential informant who it alleges was a co-conspirator of Mr. Ruan.  According to oral representations by the government, this informant was not someone who was merely a tipster and who had only a tenuous connection to the case.  Rather, it was someone who was intricately involved in the inner-workings of the alleged conspiracy, who had direct contact with Mr. Ruan at the time the offense was being committed, and whose testimony will be necessary for the government to prove its case.  In light

8

of these facts, the identity of any such a confidential informant is absolutely essential to Mr. Ruan's defense, and fundamental fairness principles require that the privilege to withhold the witnesses name must give way under these circumstances.

Regarding the cooperating witness referred to by the government, and any other witness who may be similarly situated, Mr. Ruan requests:

A.   The witness's name, address and telephone number;

B.   The case number and name of each prosecution in which s/he has previously been utilized by the government;

C.   The case names and numbers of any trials or evidentiary hearings at which s/he has testified concerning:

   (1) his/her own prior criminal activity;

   (2) payments or awards provided by the government;

   (3) efforts made to induce others to participate in criminal activity;

   (4) other propounded law enforcement related matters; or

   (5) the witness's understanding of his/her role with respect to his/her duties as an informant;

D.   Any ledger, sheet, or other document which details the sums paid to him/her or his/her family in this and other cases in which s/he assisted the government, and the specific purpose for each such payment;

E.   All information -- whether or not memorialized in memoranda, agents' reports, or other writing -- regarding promises to forego prosecution, promises of immunity, leniency, preferential treatment or any other forms of inducements made to him or

      her, or to any other family member, friend, or associate of his/hers, in exchange for his/her cooperation, including the dismissal or reduction of charges, assisting in matters of sentencing or deportation, or promises or expectancies regarding payments for expenses, or testimony, or eligibility for any award or reward;

F.      All information and records concerning any actual or implied threats of investigation or prosecution (including any immigration or tax matters), made by the government to any prospective government witness, or family members and associates of him or her, including information as to the underlying conduct precipitating such investigations;

G.      Any statement made, or information or document provided by him/her that conflicts in whole or in part with: (1) the statement of anyone else; (2) a prior statement made by him or her, with regard to the subject matter of the expected trial testimony of the witness; or (3) any other documents or witness's testimony;

H.      Any report, document, or information which details the criminal activities of the informant/witness which were undertaken by him/her without the authority or approval of the government, but for which the government has elected, formally or informally, not to prosecute;

I.      FBI rap sheets, NCIC printouts, and any other records available to the government reflecting the informant or cooperating witness's arrest(s), conviction(s), or investigative history;

J.      Information concerning prior misconduct by the informant/witness in the performance of his/her role as an informant/witness, including: any prior refusal

to testify for, or assist the government; any prior allegation of entrapment; any prior false statements made in connection with a criminal investigation; and any prior "black listing" of the informant/witness by <u>any</u> law enforcement agency;

K. Information concerning misconduct by the informant/witness other than in his/her role as an informant/witness, including misconduct that reflects on the person's lack of credibility, candor, truthfulness, or law abidingness, such as uncharged criminal conduct or fraud;

L. All information, records and transcripts which in any way indicate or reveal that any informant/witness, regarding this or any other case, has provided untruthful, false, misleading, incomplete, or inaccurate information or testimony to any state or federal law enforcement officer or agency, any state or federal grand jury, any state or federal trial court while testifying at trial, and/or any related preliminary proceedings;

M. Information reflecting the nature and extent of assets obtained by the informant/witness in connection with his/her illegal activities over the past ten years; and any records of any kind maintained by law enforcement agencies relating to the informant/witness, including records explained in:

  1. Whether s/he was given a code name;
  2. Whether s/he was given an assumed identity;
  3. The reasons why s/he is cooperating with law enforcement;
  4. Whether s/he has ever failed a polygraph examination with respect to matters relevant to the case;

      5.      Whether s/he was briefed on entrapment;

      6.      Whether s/he executed contracts with any law enforcement agency;

      7.      Whether s/he has paid income taxes to cover that which accrued on ill-gotten gains, or whether a law enforcement agency has advised the informant witness to do so.

O.    If given a polygraph exam, the results of any polygraph examination performed regarding any matter related to this case, as well as any information concerning the failure of any potential government witness to submit to a polygraph examination despite a request by a law enforcement agency;

P.    Any government agency files, or other information revealing matters relevant to credibility, mental or physical health, or narcotics, or alcohol use, or other dependencies;

Q.    All information and/or records revealing any potential impairment of the capacity of any informant/witness to observe, recall, and/or testify about the events giving rise to the charges filed in this case, including impairments of sight, hearing, memory, language or other physical, or psychological disability;

R.    All information and/or of records indicating that the informant/witness: (1) may have suffered from any mental or emotional disease, disorder, illness, or defect at any time during the time spent alleged in the indictment filed in this case, or (2) sought or received treatment for any such mental or emotional disease, disorder, illness, or defect at any time within the past five years;

S.    All information and/or records indicating that the informant/witness (1) may have

      used cocaine, marijuana, or other controlled substance, or used alcohol to excess at any time during the time span alleged in the indictment filed in this case, or (2) sought or received treatment for any substance abuse problem (including alcohol) at any time within the past five years, or (3) was ordered to receive such treatment by any court but failed to successfully complete the required program;

T.    Applicable records of all probation departments if the informant/witness has been placed on probation, or a Presentence Investigation Report has been conducted.

U.    Notes of law enforcement agents taken at the initial debriefing(s) of the informant if such notes reflect an absence of any reference to Mr. Ruan in relation to the drug dealings of the other defendants in this case and/or which reflect that the declarant either did not know that Mr. Ruan to be involved, or knew him not to be involved in drug activity with the other co-defendants.

In Roviaro v. United States, 353 U.S. 53, 65 (1957), the Supreme Court reversed a conviction where the trial court had denied defendant's pretrial motion for disclosure of an informant who was "a participant in and a material witness to" the alleged criminal transaction. In that case, the informant "helped to set up the criminal occurrence and had played a prominent part in it[;] [h]is testimony might have disclosed an entrapment." 353 U.S. at 64. The Supreme Court held that the "desirability of calling [the informant] as a witness, or at least interviewing [5] him in advance of trial, was a matter for the accused rather than the government to decide." 353

---

[5] The importance of pretrial disclosure of the informant's identity and current whereabouts is to allow the defendant "an opportunity to interview [the informant] prior to trial." United States v. Opager, 589 F.2d 799, 804 (5th Cir. 1979). As the court stated in Opager, the "importance to a litigant of interviewing potential witnesses is undeniable." Id.

U.S. at 64. [6]  Here, the informant(s) are in the position of providing information as to the limited extent or lack of Mr. Ruan's involvement in the negotiation and execution of alleged drug deals and hence, the conspiracy as a whole.  Pursuant to Roviaro, the requested information should be disclosed because the informant(s) is "the only witness in a position to amplify or contradict the testimony of government witnesses" and the negative implications their testimony will inevitably raise.  Id. 353 U.S. at 64.

## II. THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION REGARDING WHAT CONSPIRACY EXISTED AND WHAT CO-CONSPIRATOR STATEMENTS, IF ANY, ARE ADMISSIBLE

At the center of the issues Mr. Ruan presents in these pleadings is the seemingly unlimited scope of the conspiracy in which the government alleges Mr. Ruan participated.  The government's representations suggest a conspiracy with no bounds or partitions between original suppliers and ultimate consumers.  The conspiracy involves an unknown number of co-conspirators scattered between Mexico, Texas, North Carolina and Maryland.  Such a conspiracy would presumably implicate an infinite number of people and expose each member to incredible liability.

To date, the government has provided Mr. Ruan with a single statement of a single co-conspirator that purports to implicate Mr. Ruan in shipping "stuff" to the United States.

---

[6]  Thus, the Supreme Court limited the government's "privilege to withhold from disclosure the identity" of informers to the situation of an individual whose involvement in the interdiction of crime is limited to furnishing police officers with "information of violation of law," e.g., a tipster. Id., 353 U.S. at 59.  The standard for disclosure is entirely different where informants either insert themselves as active participants in or become eyewitnesses to alleged criminal transactions.  In McCray v. Illinois, 386 U.S. 300 (1967), the Supreme Court reiterated that an order compelling disclosure would be a rarity in the ordinary tipster case.

Statements of other co-conspirators would logically be necessary for the government to establish Mr. Ruan's involvement in the charged conspiracy.

In order for any such hearsay statements to be admissible against Mr. Ruan, the government would be required to demonstrate by a preponderance of the evidence that: (1) a conspiracy existed; (2) the defendant was a member of that conspiracy; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. See Fed. R. Evid. 801(d)(2)(E); United States v. Gatling, 96 F.3d 1511, 1520 (D.C. Cir. 1996) (citing Bourjaily v. United States, 483 U.S. 171 (1987)). Neither the indictment nor the discovery provided satisfy these criteria.

As to the first requirement, the government must present sufficient evidence to establish not only that the declarant and Mr. Ruan were each members of a conspiracy, but that they were members of the same conspiracy. See, e.g., United States v. Murphy, 193 F.3d 1, 7 (1st Cir. 1999); United States v. Gigante, 166 F.3d 75, 82-83 (2d Cir. 2000). In order to establish the existence of, and membership in, the same conspiracy, the court may consider the content of the statements, but the statements are not alone sufficient. See Fed. R. Evid. 801(d)(2).

As to the third and fourth requirements, namely that the statements be made during the course of and in furtherance of the conspiracy, the government must show that the statements furthered the conspiracy itself and were not made after the object of the conspiracy was either achieved or thwarted. See Anderson v. United States, 417 U.S. 211, 218-19 (1974) ("The hearsay-conspiracy exception applies only to declarations made while the conspiracy charged was still in progress, a limitation that this Court has 'scrupulously observed.'"). As such, statements made by alleged co-conspirators following apprehension by the police and termination

of the conspiracy are not admissible.  See, e.g., United States v. Saavedra, 684 F.2d 1293, 1298-99 (9th Cir. 1982).

The government has provided Mr. Ruan with little evidence that a conspiracy existed of which he was a part; that Mr. Ruan and Mr. Jones, Mr. Maynard, Mr. Carter, Mr. Barrone, Mr. Garcia, Mr. Reyna were members of the same conspiracy; or that Mr. Ruan or any alleged co-conspirator made any statement in furtherance of that conspiracy.  Mr. Ruan is left to assume either that no statements of co-conspirators made in furtherance of a conspiracy exist or that the government has chosen to withhold any statements that exist to protect the identity of informants.  In either case, this Court should hold a hearing requiring the government to present evidence that establishes each of the pre-requisites for admitting a statement of a co-conspirator.

**IV.     THE COURT SHOULD SEVER MR. RUAN'S CASE FROM THAT OF HIS CO-DEFENDANTS'**

Invariably, the evidence against separate defendants will have a different probative value as to each individual defendant.  As detailed above, the evidence against Mr. Ruan's co-defendants will be far greater than as against Mr. Ruan, causing the jury to be unable to separate the relative innocence or guilt among the defendants charged.  This confusion may result in a conviction, not on the basis of the evidence relating to Mr. Ruan, but by imputing to that him guilt based on the activity of other alleged conspirators.  United States v. Tolliver, 541 F.2d 958 (2nd Cir. 1976).  This Court should not allow the government the opportunity to place Mr. Ruan on trial for these crimes and attempt to prove them through guilt-by-association.  See United States v. Romo, 669 F.2d 285, 288 (5th Cir. 1982) (quoting United States v. Singleterry, 646

F.2d 1014, 1018 (5th Cir. 1981), cert. denied, 459 U.S. 1021 (1982)) (recognizing "long-established rule that a defendant's guilt may not be proven by showing that he associates with unsavory characters").

Given the underwhelming quantum of evidence the government has identified against Mr. Ruan and the overwhelming evidence to be presented against his co-defendants, the only means for Mr. Ruan to receive a fair trial is in a separate trial, where the alleged misdeeds of his co-defendants are not attributed to him. See Zafiro v. United States, 506 U.S. 534 (1993) (holding that evidence of a co-defendant's wrongdoings could erroneously lead a jury to conclude that the defendant was guilty, thus requiring severance).

## CONCLUSION

For the foregoing reasons, and for any others the Court finds reasonable and just, including any which may appear to the Court following a hearing on these matters, Mr. Ruan respectfully moves the Court for orders granting the relief requested above.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

/S/
Tony Axam, Jr. and
Rita Bosworth
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, DC  20004
 (202) 208-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Criminal No. 05-386(ESH) |
| FRANCISCO J. GONZALEZ RUAN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER**

The Court having considered Defendant's Omnibus Motion and the issues presented therein, for good cause having been shown, it is hereby

ORDERED that Defendant's Motion to Reveal Confidential Informants is GRANTED and further the government shall disclose the information requested in Defendant's Motion; and it is further

ORDERED that Defendant's Motion for Preliminary Determination of Conspiracy and Co-conspirator Statements is GRANTED and this Court will hold an evidentiary hearing at which the government will have to establish admissibility of any co-conspirator statement it seeks to introduce against Mr. Ruan; and it is further

ORDERED that Defendant's Motion to Sever is GRANTED and Mr. Ruan's case shall be tried separately from that of his co-defendants.

SO ORDERED this_____day of_____,2007

_____
ELLEN S. HUVELLE
UNITED STATES DISTRICT JUDGE